RIO GRANDE WESTERN RAILWAY COMPANY, Respondent, *v.* THE TELLURIDE POWER & TRANSMISSION CO. et al., Appellants.

| 16 | 125 |
| s23 | 33 |

1. *Railways—Their Construction—Limitations as to Time.*

Railway companies building roads in this state are required by section 2358, Comp. Laws 1888, to begin their construction, and expend at least 5 per cent of their capital stock, within 2 years after filing their articles, and to finish them and put them in full operation within 10 years.

2. *Railway Companies — Their Consolidation — Construction of Roads—Limitations as to Time.*

A railway company in this state, consolidating with a company of another state, creates a new corporation; and the time within which the new corporation is required to begin the construction of its road, and within which to make an expenditure of 10 per cent of its capital stock (when such beginning and expenditure have not been made before), and the time within which it is required to finish and put its road in full operation (when not finished and put in full operation before), begin to run when its articles are filed with the auditor and secretary of state.

3. *Such Company—Its Powers, Restrictions, Duties and Liabilities.*

The statute endows the new company with power to acquire right of way, to build its road, to equip and operate it, and to transact business, similar to that possessed by the roads consolidating, and subjects it to similar liabilities and duties.

4. The plaintiff had 10 years from the time its articles of incorporation were filed within which to finish and put its road in full operation.

5. *Railways—Right of Way—Public Lands, U. S.*

The land in dispute being unoccupied public lands of the United States, and the plaintiff having organized under the laws of the late territory of Utah, and having filed with the secretary of the interior a copy of its articles, and due proof thereof, it was authorized to locate its right of way over the same, and to take actual possession thereof, in pursuance of section one of an act granting to railroads the right of way through the public lands of the United States (18 Stat. 482, pt. 3).

6. *Profile of Road—Where to be Filed.*

The plaintiff, having located its right of way over unsurveyed public lands of the United States, will have one year after such survey within which to file with the register of the proper land office a profile of its road.

7. *Reservoirs and Dams—Construction on Public Lands.*

Under section 2339, Rev. St. U. S., the defendant might obtain a vested right to any of the unappropriated waters of the Provo river, for the operation of machinery, irrigation, or other useful purposes, and construct reasonable dams and reservoirs, so far as necessary; but it was not authorized to oust the plaintiff,

who had first appropriated and taken possession of the land in dispute for its right of way.

(No. 849. Decided Dec. 7, 1897.)

Appeal from the Fourth district court, Fourth district. W. N. Dusenbury, *Judge.*

Action by the Rio Grande Western Railway Company against the Telluride Power-Transmission Company and others. Judgment for plaintiff. Defendants appeal. *Affirmed.*

*Brown & Henderson* and *S. B. Bailey,* for appellants.

The plaintiff could acquire no right in Provo canyon, unless it had a charter from the territory of Utah to build a railroad up there; its charter was granted more than ten years before any of the proceedings in this case; and it prescribed as a condition precedent that the road should be commenced within two years and finished within ten; it was not done; it therefore had no right whatever. The question has been decided in the following cases: *In re Brooklyn, Winfield & Newtown Ry. Co.,* 72 N. Y. 245; *Bywaters et al.* v. *Paris & G. N. Ry. Co.,* 11 S. W. 856; *The Oakland Ry. Co.* v. *O. B. F. V. R. R. Co.,* 45 Cal. 365; *Morris-Esex Ry. Co.* v. *Central Ry. Co.,* 31 N. J. Law 205; *Commonwealth* v. *Lykens Water Co.,* 110 Penn. St. 391; *Peany* v. *Calais Ry. Co.,* 30 Me. 498; Thompson's Corp., secs. 6589, 6590, 6582, 6587, 6588.

An action to quiet title cannot be maintained without clear proof of either *pedis possessio* or legal title in the plaintiff—an equitable title is not sufficient. *Stark* v. *Starr,* 6 Wall. 409; *Frost* v. *Spitle,* 121 U. S. 552; *Fussel* v. *Gregg,* 113 U. S. 550; *Orton* v. *Smith,* 1 Miller 218; *Jackson* v. *La Moune County,* 46 N. W. 449; *Goldberg* v. *Taylor et al.,* 2

Utah 486; *Parker* v. *Stevens*, 59 N. H. 203; *Drachenfels* v. *Doolittle*, 77 Cal. 295; *McGrath* v. *Wallace*, 85 Cal. 622.

*Thurman & Wedgwood* and *Bennett, Harkness, Howat & Bradley*, for respondent.

ZANE, C. J.:

It appears from this record that the plaintiff, the Rio Grande Western Railway Company, was organized on June 24, 1889, by the consolidation of the Denver & State Line Railway Company, a then recent corporation of Colorado, and the Denver & Rio Grande Western Railway Company, a corporation of Utah, organized July 28, 1881. The plaintiff alleged in its complaint that it was authorized to build a railway in Provo Canon, in Utah, on either of two routes described, which were identical for the first 12 miles; that it had located and surveyed the right of way for its railway over the land in dispute, and was in actual possession, grading the same, when the defendants, under an adverse claim, stopped the work by threats. Judgment quieting title and awarding an injunction was asked. It was admitted that the land was unsurveyed land of the United States. Defendant Holbrook disclaimed any interest in the subject of litigation, but united with the other defendants in denying plaintiff's right. The other defendants, answering further, alleged possession, and a right to dam the river and flow the canon and the lands in question. The court heard the case, made its findings of fact, stated its conclusions of law, and decreed that the plaintiff lawfully appropriated the land in dispute and was in the actual possession thereof, and that the defendants had no right or title thereto, and issued an injunction restraining them from interfering with plaintiff's possession. The defendants have brought the case before

us for review. The errors alleged raise the following questions, which we deem it necessary to consider and decide: (1) Had there been a statutory forfeiture of the plaintiff's charter, in consequence of a failure to complete and put its road in operation, as required by the statute, after its articles were filed with the auditor and secretary of the late territory or the state of Utah? (2) Had plaintiff the lawful right to locate its right of way in the canon, and had it located it over the land in dispute, and was it in the actual possession thereof when defendants interfered with its possession? (3) Did the law require the plaintiff to file with the register of the land office a profile of its road, in order to rely on location and actual possession? (4) Had the defendants, or either of them, made such appropriation and had they, or either of them, such possession, of the land in dispute, as authorized them to hold it against the plaintiff?

In deciding the first question, it is necessary to determine whether the evidence shows a violation by the plaintiff of section 2358, Comp. Laws Utah 1888, as follows: "If such railway company shall not within two years after the filing of its original articles of association begin the construction of its road and expend thereon at least five per cent. of the amount of its capital stock, and finish the road and put the same in full operation within ten years, its act of incorporation shall be void." This section required the plaintiff to begin the construction of its road, and to expend thereon at least 5 per cent. of the amount of its capital stock, within 2 years after filing its original articles of incorporation, and also required it to finish the same and put it in full operation within 10 years of that time. The 2 years within which the construction must commence, and the 10 years within which the road must be finished and put in full operation, begin

to run when the company files its original articles of incorporaton.  One of the companies consolidating, namely, the Denver & Rio Grande Western, filed its articles of incorporation in 1881, more than 15 years before the plaintiff commenced constructing its railway over the land in dispute; but the plaintiff organized and filed its articles of incorporation on June 24, 1889, less than 7 years before the plaintiff commenced the construction of its line over the land.  The entire distance of the various lines of road mentioned in the plaintiff's articles, constructed and to be constructed, amounts to about 3,100 miles; and there appears to be no doubt that the Utah company commenced to build its road, and that it expended thereon more than 5 per cent. of its capital stock, within 2 years after its articles of incorporation were filed, but it is clear that the construction of the road over the land in dispute was not commenced until 15 years thereafter. It is therefore necessary to determine whether the company organized by the old companies is to be regarded as a new and distinct company, or is, in effect, the perpetuation of the old ones, consolidated under a new name; and, if the company organized by the old ones shall be regarded as a new and distinct one, whether the limitation of 10 years in which to complete its road shall be applied to the new one, with a portion of the 10 years exhausted and deducted, or whether it shall have the full 10 years after filing its articles of incorporation within which to finish and put it in operation.  In order to determine these questions, it will be necessary to interpret and construe the law authorizing such railway companies to consolidate.

Section 2360 of chapter 3, Comp. Laws Utah 1888, declares that "it shall be lawful for any railroad companies organized under the laws of this

territory to consolidate their capital stock, debts, property, assets, and franchises with any railroad company or companies organized under the laws of any state or other territory." This section authorizes Utah corporations to consolidate their capital stock, debts, property, assets, and franchises with railroads of other states. It does not say that Utah corporations shall consolidate their right to exist with the right to exist which a corporation may possess under the laws of another state. The franchise or right to be a corporation—of corporate existence—is regarded as different from the franchise or right to transact the business and to perform the acts essential to effect the purposes of the corporation. The method of effecting the consolidation authorized by the above section is prescribed by section 2361 of the same chapter, as follows: "Said consolidations shall be made under the conditions, provisions, restrictions, and with the powers hereinafter in this act mentioned, that is to say, the presidents or secretaries of the several corporations proposing to consolidate, may enter into a joint agreement under the corporate seal of each company for the consolidation of said several companies, and prescribing terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number and names of the directors and officers thereof, and who shall be the first directors and officers, and their places of residence, the number of shares of capital stock, the principal place of business of the new company in each state or territory traversed by the line of railway, and such other provisions as may be required by law to be inserted in an original certificate of incorporation, the manner of converting the capital stock of each of said companies into that of the new corporation, and how and when directors

and other officers shall be chosen, with such other details as they shall deem necessary to perfect such new organization and consolidation of said companies; said agreement shall be authorized or ratified by the board of directors of each company consolidating, and shall be submitted to the stockholders of each of the said companies or corporations, at a meeting thereof called for the purpose of taking the same into consideration;   *   *   *   and the agreement so adopted, or a certified copy thereof, shall be filed in the office of the auditor of public accounts, and in the office of the secretary of this territory, and shall from thence be deemed and taken to be the agreement and act of consolidation of said companies, and a copy of said agreement and act of consolidation duly certified by said auditor or by the secretary of the territory, under his official seal, shall be evidence of the existence of said new corporation.   *   *   *" This section requires the companies consolidating to enter into a joint agreement, and requires the conditions of the consolidation, the mode of carrying the same into effect, the name of the new corporation, the number and names of the directors, the number of shares of the capital stock, and such other provisions as may be required by law to be inserted in an original certificate of incorporation; also, the manner of converting the capital stock of each company into that of the new corporation. In short, the essential provisions and statements common to all railroad articles or charters under the laws of this state are required. And the section declares that such agreement, when duly filed with the auditor of public accounts and with the secretary of state, shall from thence be deemed and taken to be the agreement and act of consolidation. An organization so formed by the acts of the companies consolidating is characterized in the section as a new cor-

poration. By such means a new corporation is brought into existence. Other sections of the chapter in which the franchise—the powers necessary to enable the corporation so created to accomplish the purpose of its creation, namely, the authority to build its railway and to equip and operate it, we will now call attention to and consider.

Section 2362 declares that: "Upon the making and perfecting the said agreement and act of consolidation, as provided in the preceding sections, and filing the same as aforesaid, the several corporations parties thereto shall be deemed and taken to be one corporation, by the name provided in said agreement and act, possessing within this territory all the rights, privileges and franchises, and subject to all the restrictions, disabilities, duties and liabilities of each of such corporations so consolidated." This section declares that the corporation so formed shall possess, within the state, all the franchises, rights, and privileges of each of the corporations consolidating, and that it shall be subject to all the restrictions, disabilities, duties, and liabilities to which they were subject. The franchises, rights, and privileges, and the restrictions, disabilities, duties, and liabilities, intrusted to or imposed upon the new corporation, are such as were described in the charters of the old ones. Instead of enumerating them in the charter of the new company, the charters of the old companies are referred to for an enumeration and descriptions of them. Section 2363 of the same chapter also declares that: "Upon the consummation of said consolidation as aforesaid, all and singular the rights, privileges and franchises of each of said corporations parties to the same, and all the property, real, personal and mixed, and all debts due on whatever account, as well as of stock, subscriptions and other things in action belong-

ing to each of such corporations, shall be taken and deemed to be transferred to and vested in such new corporation without further act or deed, and all property, all rights of way, and all and every other interest shall be as effectually the property of the new corporation as they were of the former corporations, parties to said agreement; and the title to real estate, either by deed or otherwise, under the laws of this territory, vested in either of such corporations, shall not be deemed to revert or be in any way impaired by reason of this act; and all debts, liabilities, and duties of either of said companies shall henceforth attach to the said new corporation, and be enforced against it to the same extent as if said debts or liabilities had been incurred or contracted by it." This section transfers all the rights of property, debts due, stock, subscriptions, and rights of way belonging to the old corporations, to the new one, and imposes all debts, liabilities, and duties of either of them. Other provisions of the same chapter authorize it to sue and be sued. It is quite clear that the franchise or right of the old corporations to exist as such was not transferred by the consolidation to the plaintiff, the new one. They were not authorized to transfer their right of corporate existence to the new one, nor did the law make such a transfer. The law did authorize the old companies to organize the new one in the mode pointed out; and, when they had done so, it endowed the new company with the same or similar franchises, powers, and authority to acquire a right of way, to build its railway, to equip and operate it, and to transact such business, as the roads consolidating could, and subjected it to the same or similar disabilities, restrictions, and liabilities in the use of its franchises. The plaintiff, the new corporation, was given a term of 50 years. It was not given the unexpired

term of the old companies. And we think it was given the term of 10 years from the time it filed its articles of incorporation with the auditor and secretary of state, within which to finish its road and put it in operation,— not the unexpired portion of the 10 years they had when they consolidated, which was about 1 year. We are of the opinion that the plaintiff is such a railroad corporation as section 2358 contemplates, and that its articles are such as are contemplated by it, and that it was entitled to 10 years from the time it duly filed them within which to finish its road and put it in full operation. *Memphis & L. R. Co.* v. *Railroad Com'rs,* 112 U. S. 609; *Railway Co.* v. *Hellman,* 109 Cal. 571.

This view of the law renders it unnecessary to decide whether or not section 2358, above quoted, is self-executing.

The second question for our determination and decision is, does it sufficiently appear from the evidence in the record that the plaintiff had located its right of way upon the land in dispute, and whether it was in actual possession at the time the defendants interfered with its possession? It appears that the plaintiff located its right of way over the land in dispute in pursuance of section 1 of "An act granting to railroads the right of way through the public lands of the United States," which is as follows, so far as we deem it necessary to quote: "That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior, a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line

of said road." 18 Stat. 482, pt. 3. It appears that the plaintiff had duly filed with the secretary of the interior a copy of its articles of incorporation, and due proof of its organization·thereunder; that it surveyed and located its right of way over the land in dispute about the 1st day of July, 1896, and while its employés were engaged in grading the same (on the 3d day of the following August, in one place, and on the 8th day of the following September, in another place) the defendant stopped them. The plaintiff's location of its right of way over the land, and its possession thereof, appear to have been lawful.

As to the third point, it appears that the land in dispute was unsurveyed public lands of the United States, and the fourth section of the act last named provides: "That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the secretary of the interior the same shall be noted upon the plats in said office. * * * " If the land had been surveyed, the plaintiff would have had 12 months after the survey within which to make the location; but, it being unsurveyed, it will have 12 months after the same is surveyed by the government within which to file with the register of the proper land office a profile of its road.

The fourth question for decision is, have the defendants any right to the land in dispute? We have no doubt that the defendants might have obtained a vested right to any unappropriated waters of the Provo river for the purpose of operating machinery, for irrigation, or other

useful purpose. Such right is recognized and acknowledged by the laws and decisions of this state. And section 2339 of the Revised Statutes of the United States declares that: "Wherever by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purpose herein specified is acknowledged and confirmed." This right is not unrestricted, however. It must be exercised within reasonable limits. *Basey* v. *Gallagher*, 20 Wall. 670. While no mention of dams or reservoirs is made in the law, we are of the opinion that, so far as they may be necessary to the reasonable appropriation and use of such waters, they may be constructed; but as to whether such dams might be raised to the height of 85, 60, or even a less number of feet, we do not deem it necessary in this case to express an opinion. Such dams and reservoirs must be kept within reasonable limits. It appears that the defendants' dam, to the height of 15 feet, does not interfere with the use of the highway in the canon, or with the occupancy or use of the canon for any other legitimate purpose. We are unable to find, from a preponderance of the evidence in the record, that the defendants, or either of them, had appropriated the land in dispute, and that they were, or that either of them was, in actual possession of it, when the plaintiff located his right of way, took actual possession, and engaged in grading it. We cannot regard the plaintiff as a mere intruder on the defendants' possession; nor can we hold that they had a right to prevent the plaintiff's employés from grading it,

and to eject plaintiff from actual possession. It is true, the defendants had surveyed for dams and reservoirs at different points on the river, but they had not taken, and did not hold, actual possession of the land in dispute.

Other questions were raised and discussed by counsel, but the view we have taken of the case renders it unnecessary to consider them in this opinion. The decree of the court below is affirmed.

BARTCH and MINER, JJ., concur.