## THE RIO GRANDE WESTERN RAILWAY COMPANY, Respondent, v. THE TELLURIDE POWER TRANSMISSION COMPANY, and L. L. NUNN, Appellants.

REVIEW—BY STATE COURT — OF ORDER OF FEDERAL COURT REMANDING CAUSE — RES JUDICATA — AS A PLEA — AS EVIDENCE — ESTOPPEL— PLEADING—GENERAL RULE—WHEN NEED NOT BE PLEADING—FINAL JUDGMENT—ON MERITS—COMPLETE ESTOPPEL—TO SUBSEQUENT ACTION—FOREIGN CORPORATIONS—NOT ENTITLED TO BENEFIT OF LAWS —FAILURE TO COMPLY WITH SECTION 2, 6, 9 AND 10 CONST., SEC. 2293 C. L. U. 1888, AS AMENDED IN 1896, AND SECTIONS 351 AND 352 R. S. 1898—CORPORATE EXISTENCE — POWERS — FOREIGN CORPORATION — WHAT IT BRINGS WITH IT ON COMING INTO THE STATE — NATURAL PERSON—ACTING FOR USE AND BENEFIT OF CORPORATION—CANNOT BE PERSONAL CLAIMANT—WHERE CORPORATION IS INCAPABLE OF ACQUIR-ING PROPERTY—SETTLER ON PUBLIC LANDS—PRE-EMPTION RIGHTS—CANNOT BE ACQUIRED BY PURCHASE.

1. REVIEW: BY STATE COURT: OF ORDER OF FEDERAL COURT REMANDING CAUSE. The Supreme Court of this State has no power to review, on appeal, an order of a Federal court, declining jurisdiction and remanding the cause to the State court.[1]

2. RES JUDICATA: AS A PLEA: AS EVIDENCE. When the same matter is directly in question in another suit between the same parties, and the judgment of the former suit is directly in point, it will be as a plea, a bar, as evidence conclusive.

3. ESTOPPEL: PLEADING: GENERAL RULE: WHEN NEED NOT BE PLEADED. While it is a general rule that estoppel by a former judgment must be pleaded, the rule does not apply to cases when no opportunity to plead the estoppel is given, and when a former judgment is admissible under the general issue, it is just as conclusive when so presented, as if it had been pleaded.

4. FINAL JUDGMENT: ON MERITS: COMPLETE ESTOPPEL TO SUBSEQUENT ACTION. A successful defense to one of a series of actions founded

[1]Telluride Power Co. v. R. G. W. Ry. Co., 175 U. S. 639.

upon the same transaction or subject-matter, if it goes to the merits of the whole, is a complete estoppel to any subsequent action between the same parties, upon the principle, that a judgment is final as to all points and questions actually litigated and determined by it.

5. FOREIGN CORPORATIONS: NOT ENTITLED TO BENEFIT OF LAWS: FAILURE TO COMPLY WITH SECTIONS 2, 6, 9, AND 10, CONSTITUTION, SECTION 2293, C. L. U. 1888, AS AMENDED IN 1896, AND SECTIONS 351 AND 352, REVISED STATUTES 1898. Sections 2, 6, 9 and 10, Constitution, are expressly embodied in section 2293, C. L. U. 1888, as amended in 1896, and in sections 351 and 352, Revised Statutes 1898, and prohibit foreign corporations from doing business in this State, unless they have complied therewith; and any corporation failing to so comply, is not entitled to the benefits of the laws of this State relating to corporations.[2]

6. CORPORATE EXISTENCE: POWERS: FOREIGN CORPORATION: WHAT IT BRINGS WITH IT ON COMING INTO THIS STATE. A corporation can only have an existence under the express laws of the State where it is created; it can exercise no power not granted by its charter or some legislative act, and a foreign corporation coming into this State can not bring with it powers with which it is not endowed in the State where created.

7. NATURAL PERSON: ACTING FOR USE AND BENEFIT OF CORPORATION: CAN NOT BE PERSONAL CLAIMANT: WHERE CORPORATION IS INCAPABLE OF ACQUIRING PROPERTY. Where it sufficiently appears from the evidence that the defendant, who is a natural person, performed his acts for the use and benefit of the defendant, which is a corporation, he can not be treated as a personal claimant and owner of the easement and right of way in controversy, the corporation being incapable of acquiring such ownership.

8. SETTLER ON PUBLIC LANDS: PRE-EMPTION RIGHTS: CAN NOT BE ACQUIRED BY PURCHASE. A party settling upon unsurveyed government land, who in good faith complies with the statutory requirements, is entitled, as against subsequent settlers, to pre-empt the land, but would derive no right thereto by purchasing the claim of a prior settler, unless by actual entry at the proper office he had acquired some right thereto.

---

[2]Barse Live Stock Co. v. Range Valley Cattle Co., 16 Utah 59; 50 P. 630.

Decided December 11, 1900; rehearing denied January 5, 1901; writ of error to the Supreme Court of United States allowed January 7, 1901.

Appeal from the Fourth District Court Utah County.—*Hon. W. M. Dusenberry,* Judge.

Action under the statute to condemn a strip of ground for a right of way for plaintiff's railway.   From a judgment for plaintiff defendants appealed.

AFFIRMED.

*S. A. Bailey, Esq.,* and *Messrs. Brown & Henderson* for appellants.

In an action to condemn the plaintiff necessarily admits the defendant's title.   Or, as frequently stated, it is incumbent upon a plaintiff seeking to condemn land to ascertain the owners and make them parties, and by selecting the parties against whom he proceeds the plaintiff admits their ownership. Railroad Co. v. Croman, 27 Pac. 256; Lewis on Eminent Domain, sec. 441; Railroad Co. v. Teters, 68 Ill. 144.

Neither must there be any uncertainty in the interest to be condemned as set forth 'in the complaint, nor in the description of the property.   Railroad Co. v. Dominick, 8 N. Y. Sup. 151; Water Co. v. Baker, 95 Cal. 268.

"So far as this case is concerned, the right to appropriate water begins when actual work begins, which is intended and calculated to effect an application of the water to some beneficial use, and the right continues as long as the work is prosecuted with diligence.   While the work is being so prosecuted, the extent of the rights is the same as the extent of the claim

Railroad v. Power Co. and Nunn.

made by the appropriator within reasonable limits. The appropriation should be completed within a reasonable time; and when it is so completed, the right relates back to the beginning of the work and is limited by the extent of the appropriation. What are diligence, a reasonable time, and reasonable limits, are questions of fact for the jury under all of the circumstances of the case." Black's Pomeroy on Water Rights, secs. 53, 55; Ophir Mining Co. v. Carpenter, 4 Nev. 534; Irwin v. Strait, 18 Nev. 436; Osgood v. El Dorado Co., 56 Cal. 571; Water Supply Co. v. Irrigation Co., 51 Pac. 496.

Conceding, for the sake of argument, that the defendant's interest in the premises—the right to flood them for power purposes—can be taken by condemnation proceedings for railroad purposes, then the damage caused to the defendants by the taking, the use for which defendants acquired the premises, to which they intended to apply them and to which they were adapted, should be considered in estimating their value. Mississippi and Rum River Boom Co. v. Patterson, 98 U. S. 403; Little Rock & F. S. R. Co. v. McGehie, 41 Ark. 202; King v. Minneapolis W. R. Co., 32 Minn. 224.

*Messrs. Thurman & Wedgwood,* and *Messrs. Bennett, Harkness, Howat, Sutherland & Van Cott,* for respondent.

A corporation of one state, going to another can not take with it powers with which it is not endowed where it is created. As to other powers, it does not exist. This is only elementary, and it is unnecessary to cite a long list of authorities, and we only refer to State v. So. Pac. Co., 28 So. 372, citing Or. Ry. Co. v. Oregonian Co., 130 U. S. 1.

We also claim the appellants are barred and estopped by the judgment in what is called, for brevity, the "Murphy" case.

Appellants objected that the judgment should have been pleaded. At common law it is not necessary. As a plea it is a bar, and as evidence conclusive on the points adjudged. Herriman on Estoppel, sec. 107; Black on Judgments, vol. 2, sec. 784, 787, *et seq.*

It makes no difference that the subject of the action is not the same, if the same right and claim are directly in issue. Black on Judgments, sec. 750, 751, 755; Oregon Ry. Co. v. O. R. & N. Co., 27 Fed. 277; Roberts v. N. R. Ry. Co., 158 U. S. 1.

The court below can not admit record evidence, give it a limited effect in law, and bind this court by such construction, for the construction and effect are purely questions of law. Morgan et al. v. Cox et al., 27 Fed. 36.

The writ of error to the Supreme Court of the United States did not supersede the judgment. U. S. Revised Statutes, sec. 1007; Western A. L. C. Co. v. McGillis, 127 U. S. 776.

Even if the judgment had been superseded, it would not have affected the injunction. High on Injunctions, vol. 2, sec. 1699; Heinlin v. Cross, 63 Cal. 44.

The first error assigned is that the court erred in denying the transfer to the Federal Court.

We do not care to go over the correctness of this decision for two reasons: It is unquestionably right, and supported by all the cases then, and since, decided. Houston & T. Central Ry. v. Texas, 176 U. S. 78; Telluride Power T. Co. v. The R. G. W. Ry. Co., 175 U. S. 639.

Since the passage of Ch. 866, Laws of 1888, first Supplement to U. S. R. S., p. 611, and the last clause of section 2 of the act, on p. 613, it has been universally held that the order remanding is final and ends the question of jurisdiction. No appeal or writ of error lies, and not even mandamus. We

refer to cases on the margin of the section. 123 U. S., pp. 56, 286, 679; 134 U. S., p. 45; 137 U. S., pp. 143, 451.

Following appellants' title, "Nature of the Action," we may say it is a proceeding to exercise the right of eminent domain, passed by the state and delegated for special purposes to the plaintiff. Originally, and as the phrase implies, there was no resort to any court. Governments took whatever was needed for public uses, and if any compensation was made it was voluntary. Laws relating to the subject do not grant any power, but limit its exercise so as to require some inquiry and compensation before property can be taken.

It is not an equity action, for courts of equity have never exercised the right to condemn. It is a proceeding authorized by statute, and the statute requirements must be followed, and it may be called a special proceeding, in the nature of an action at law, and the appeal here can only be on questions of law. As it is not a common law action, a special tribunal of any kind may be appointed according to law (U. S. v. Jones, 109 U. S. 513), and the special proceedings prescribed must be followed. No jury is needed, unless required by law. Scudder v. Trenton Falls, 23 Am. Dec. 756; City of St. Joseph v. Geiwitz, 49 S. W. 1000; Lewis on Eminent Domain, sec. 311.

The appellants, prior to the location of the respondent, had not and never has appropriated any water at Hanging Rock. Act of Congress, printed p. 216, vol. 1, C. L. of Utah, 1888.

The act was construed by the Supreme Court of the United States in Atchison v. Peterson, 20 Wall. 507; Basey et al. v. Galligher, 20 Wall. 671; R. G. W. v. Telluride, etc., 16 Utah 125.

The act of Congress was not a direct grant, but a ratification of existing customs. Pomeroy on Riparian Rights, sec. 13 to 16; Broder v. Water Co., 101 U. S. 274, 276.

An appropriation of water under customs consisted in taking and applying it to a beneficial use. Pomeroy, sec. 48, p. 76, and sec. 53, p. 81; Pomeroy, sec. 47, 50, 51, 52; Kinney on Irrigation, sec. 157, p. 242. See also Kinney on Irrigation, sec. 158 to 161; Osgood v. Eldorado Co., 56 Cal. 571.

Public land is appropriated in one way, water in another way. Pomeroy, sec. 50, p. 79.

Digging a ditch is not an appropriation of a mill site. Pomeroy, sec. 50; Robinson v. Imperial M. Co., 5 Nev. 44.

The appellants were not entitled to any damages. The deed of Ferguson conveyed nothing. Sproat v. Durland, 35 P. R. 682, 688; Quinlan v. Conlan, 104 U. S. 420, 422-5; Frisbee v. Whitney, 9 Wall 187; Yosemite Case, 15 Wall 77; Buxton v. Traver, 130 U. S. 232; Moore v. Besser, 43 Cal. 511.

Appellants gave no evidence of damages. Under continuous objections, not reviewable here, the court permitted them to give evidence that if they built a dam and acquired certain horse power, and if operating expenses were only so much, and the power all sold at a certain profit, the enterprise would be magnificent and immensely profitable.

Such evidence was not admissible because immaterial and irrelevant, and, though in the case, can have no weight. Lewis on Eminent Domain, sec. 480; Hamilton v. Pittsburg Co., 42 At. 369; s. c., Am. and Eng. Ry. Cases, vol. 13, p. 375, and notes.

STATEMENT OF FACTS.

This is an action, under the laws of Utah, to condemn a strip of ground for a right of way 200 feet wide by about 4,500 feet long, in Provo Canyon, Utah county, along and near the Provo river. The complaint was filed September 12,

1896, and among other averments alleges plaintiff's corporate capacity, and its authority to construct a line of railway through Provo Canyon; that in 1889 it filed with the Secretary of the Interior at Washington a copy of its articles and proofs of organization; that on or about March 1, 1896, it commenced a survey and location of its line of road over the land claimed by the defendants, from Provo through the canyon, and completed it for a distance of forty miles from Provo, and on both sides of the canyon for twenty miles upon unsurveyed land of the United States; that a map of such survey has been made and adopted by it as its definite location, and that it has commenced and prosecuted the construction of its road on such line; that prior to plaintiff's survey, defendant Ferguson, (who does not appeal) had or claimed some possessory right by occupation of some part of such land not surveyed over which plaintiff's line of road runs; that plaintiff claimed for its right of way for railroad purposes a strip of land one hundred feet wide on each side of the center line of its survey up the river across land that defendant Ferguson claims; that the land is necessary for the construction and operation of its road; that plaintiff is the owner and in the possession thereof, and that it could not purchase said right of way from either of the defendants.

Defendants, the Telluride Power and Transmission Company and L. L. Nunn answered, jointly, and denied many of the allegations of the complaint, claimed the land and possession thereof, and a right to flow the same for power purposes. Among other matters the answer denies the jurisdiction of the district court; claims the title and possession of the premises and flow of the water as part of a reservoir site and for agricultural purposes, and as having been claimed by defendants and Nunn prior to the railroad survey; that the property was claimed for a public use, and therefore could not be condemned

by the proceedings instituted by the plaintiff, and also claims that the plaintiff did not intend to construct a railroad.

Defendant Ferguson answered separately, alleging the main facts in the former answer, and alleged a contract to convey to defendant Nunn.

Ferguson, who was a squatter upon the land, died in February 1897. His widow and heirs answered after his death, and claimed to occupy the land sought to be condemned, but subject to the paramount title of the United States.

The testimony is very voluminous and somewhat contradictory, but tends to show, among other things, the organization of the plaintiff in 1889, with authority to build and construct a line of railroad over either of the two lines surveyed in the canyon in question; that soon after its organization the plaintiff filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization under the same; that on March 24, 1896, it commenced a survey and location of its railroad up said canyon, over the land in question, which is unsurveyed land of the United States; that plaintiff has made a map of said survey and located its line, and the survey and location thereof has been adopted by it as the definite location thereof, and that it has since prosecuted the construction of said road with all convenient speed to the completion thereof; that at different intervals of time after August, 1894, and prior to March 24, 1896, defendant Nunn had been upon the land, in the interest of the defendant company, with Mr. Holbrook, and some levels were made along the canyon; that survey stakes were placed in different localities, and plans for a dam were discussed and some underbrush was cut along the river; that Mr. Holbrook, as trustee, under the direction of Nunn, posted a notice dated October 5, 1894, about two hundred feet above the county bridge near Bridal Veil Falls, and about 2,800 feet below Middle Rock, and 4,200

feet below Hanging Rock, claiming the right to take water, eighty yards above the county bridge, near where the notice was posted, and near Thayer's house, for the purpose of generating an electrical current, etc., but in May, 1895, this project to take such water near this point was abandoned, and in May, 1895, Middle Rock was selected by the engineer of the defendant company, as a point of diversion, by a temporary plat, and in 1895 surveyors acting for the defendants ran a trial line from Middle Rock 3,700 feet above Holbrooks notice. This power line was sixty feet above the level of the river at Middle Rock and run up the river about one mile above Hanging Rock, and down the river about the same distance. A stake marked "top of the dam" was set near the lower level and the river fifteen feet above the water line. This stake remained there until August, 1896. About March 26, 1896, preliminary surveys were made for a flume on the lower level. On March 24 notices were posted by defendants' chief engineer, and Nunn's name was attached thereto. One of these notices was posted at Middle Rock on the sixty foot level, and a like notice was posted at Deer Creek, seven miles above Middle Rock. The notices claimed all land lying up the stream below the level of the point of the notices, for reservoir purposes, and a dam at the point opposite the notices so constructed as to contain the water of the stream on the level with the notices, and for the purpose of using the water for agricultural and manufacturing purposes. Thereafter Nunn declared the notices a mistake, and that he did not intend a sixty foot dam at that place, but intended to raise the water eighty-five feet at Hanging Rock and directed a survey at Hanging Rock on the eighty-five foot level. No notice was given for an eighty-five foot dam at Hanging Rock, but surveys were made. Some work was done in April, 1896, and in the summer of 1896 near this point. No dam was constructed at

Hanging Rock, and no notice to erect it had been given. A dam fifteen feet high would not injure the plaintiff's line or the county road. An eighty-five foot dam at Hanging Rock would flow the canyon over four miles above that point, and would flow the county road and railroad from one to seventy feet, and would require a change of the railroad grade for about nine miles at a cost estimated at $20,000 per mile, besides many other expenditures.

In December, 1896, Ferguson, who was a squatter upon the land sought to be condemned for a railroad right of way, conveyed his interest therein to the defendant Nunn.

The question of the damages to the property was submitted to the jury, and damages were awarded to the defendants.

The question concerning conditions precedent to the condemnation, and whether the plaintiff had shown a right thereto, and all conflicting and adverse claims to the property were reserved by the court.

After stating the facts, MINER, J., delivered the opinion of the court.

1. The Telluride Power Transmission Company and L. L. Nunn, the appellants, filed a petition to remove the case to the Federal Court, alleging diversity of citizenship. This petition was denied by the district court, and after transfer to the Federal Court on a transcript of the proceedings, the case was remanded to the district court. The appellants now object to the jurisdiction of the state courts to hear or try the case, and ask this court to review the order of the United States Court in remanding the case to the district court of the State. This we can not do. From such an order no appeal lies to this court. The order remanding the case is final, and this court

Railroad v. Power Co. and Nunn.

has no authority to review, on appeal, the order of the Federal court remanding the case to the state court.    Murray v. Lockhart, 123 U. S. 56; Richmond & Danville Railroad Co. v. Thoubron, 134 U. S. 45; In re Pennsylvania Co., 137 U. S. 451; Telluride Power Co. v. R. G. W. Ry. Co., 175 U. S. 639.

2. Many of the questions involved in this case were passed upon by this court in the case of the Rio Grande Wes. Ry. Co. v. Telluride Power Company et al., 16 Utah 125.    In that case the court held, in substance, that respondent was such a railroad corporation as was contemplated by section 2358, C. L. U. 1888; that its articles were such as were contemplated by it, and that it was entitled to ten years from the time it duly filed them within which to finish the road and put it in full operation; that it sufficiently appeared from the record that the plaintiff had located its right of way upon the land in dispute under section 1 of an act granting railroads the right of way through the public lands of the United States, found in eighteenth Statute at Large, page 482, part 3; that the plaintiff has duly filed its articles of incorporation, and due proof of its organization thereunder, with the Secretary of the Interior, and that it surveyed and located its right of way over the land in dispute (being along the same line in question here) about the first day of July, 1896; that the plaintiff's location of its right of way over the land, and its possession thereof was lawful; that under subdivision 4 of the same act (18 Stat. at Large, 483) the land in question being unsurveyed land of the United States, the plaintiff had twelve months after the land was surveyed by the government within which to file with the Register of the proper land office a profile of its road; that under the laws of this State, and section 2339, Revised Statutes United States, the defendants never had the title, possession, or right of possession to the

23 Utah—3

land in question, or acquired any vested right in accordance
with the laws or customs of the country, or any right to flow
or otherwise occupy said land or prevent the use and occupation
thereof by the plaintiff railroad company, and that their ad-
verse claim to the land in question as against the plaintiff was
unfounded, and that plaintiff was entitled to judgment; that
the defendants (if properly organized) might have obtained
a valid right to any unappropriated water of Provo river for
the purpose of operating machinery, for irrigation, or other
useful purpose, under the laws of this State and under section
2339, Revised Statutes United States. This section reads as
follows, in part: "Wherever by priority of possession, rights
to the use of water for mining, agricultural, manufacturing,
or other purposes have accrued, and the same are recognized
and acknowledged by the local customs, laws and decisions of
courts, the possessors and owners of such vested right shall be
maintained and protected in the same; and the right of way
for the construction of ditches and canals for the purpose
herein specified is acknowledged and confirmed;" that such
right was not unrestricted however; that it must be exercised
within a reasonable time; that while dams and reservoirs may
be erected, they must be kept within reasonable limits; that
defendants' dam to a height of fifteen feet would not interfere
with the use of the highway in the canyon, or with the use for
other legitimate purposes; that the defendants had not appro-
priated the land in dispute, and that neither of the defendants
was in actual possession of the land when the plaintiff located
his right of way, took possession and engaged in grading it.

3.     On the trial of this case the judgment roll of the
former case referred to, was placed in evidence, under objec-
tion.    The complaint was a common complaint to quiet title
to an easement under the act of Congress, and the possession
of a strip of land adjoining Ferguson's strip on the north-

east, extending along the canyon to Hanging Rock and Middle Rock to appellant's alleged diverting dam. The defendants were the same, except Ferguson, and the answer was about the same. Holbrook disclaimed, as here. The identity of the land was admitted. The issue in the case was left between the appellants and the plaintiff as here on this appeal, and practically on the same questions. Appellants objected to the introduction of the judgment roll in evidence, because it was not pleaded. The evidence was admitted, but no assignment of error was made upon its reception. The question is what effect does the evidence have.

In the present case the plaintiff does not base his cause of action upon the judgment. No counterclaim was put in by the defendants, and there was no opportunity to plead it to the answer. Besides the judgment was not rendered or decision reached in the Supreme Court until the issues were made in this case. The judgment in such cases should be pleaded if the plaintiff bases any right upon it, and there is an opportunity to plead it. As a plea the judgment is a bar, as evidence, it is conclusive on the point decided between the same parties.

In 1 Herman on Estoppel, section 107, it is said: "But when the same matter is directly in question in another suit and the judgment of the former suit is directly in point, it will be as a plea, a bar, as evidence, conclusive."

In section 784 Black on Judgments, it is said: "A former recovery in which the same matter was tried and determined upon the merits, may be given in evidence without being specially pleaded, whenever the party, plaintiff or defendant, had no opportunity to plead the judgment specially, and its effect, in such case, is equally conclusive as if it had been pleaded."

While it is a general rule that estoppel by a former judg-

ment must be plead, the rule does not apply to cases where no opportunity to plead the estoppel is given, and when the judgment is admitted as evidence, where there is no opportunity to plead it, both the preponderance of authority in this country and the weight of sound legal reason sustain the doctrine that a former judgment, if admissible under the general issue is just as conclusive when so presented as if it had been pleaded. 2 Black on Judgments, secs. 784, 787, and cases cited.

So, a successful defense to one of a series of actions founded upon the same transaction or subject matter, if it goes to the merits of the whole, is a complete estoppel to any subsequent action between the same parties. This rule is based upon the principle that a judgment is final as to all points and questions actually litigated and determined by it. The estoppel operates only in regard to matters in issue between the same parties and upon the determination of which the judgment was rendered, and if the second action is upon a different claim or demand, the judgment in the prior suit operates as an estoppel only as to those matters in issue or controverted, upon the determination of which the final judgment was rendered. Black on Judgments, secs. 750, 751, 755; Oregon R. R. Co. v. O. R. & N. Co., 27 Fed. 277; Roberts v. U. P. R. R. Co., 158 U. S. 1.

The principles announced in the former decision, so far as pertinent in the present case, must be considered as determining the questions adversely to the appellants, if the parties were the same. But the parties are not the same. Ferguson was not a party in the former suit. The former decision must be treated as authority, and as determining the law in this case, in so far as it decided the same questions involved in the present case.

4. The record shows that the San Miguel Gold Mining Company was organized in Colorado, February 7, 1891, with

a capital of $15,000,000, and was authorized to acquire by purchase, lease, or otherwise, mining property, together with water rights, power, ways, mills and mill sites; to develop, mine, work and utilize the same, and to carry on a general mining business. Its principal office is in Telluride, Colorado, and its principal business is to be done in Colorado, and its articles provide that part of its business may be done in Boston, Mass., and its principal office kept there. The stock is non-assessable, and no requirements for payments of subscription are incorporated in it. In February, 1896, an amendment of its articles was made and filed with the Secretary of State in Colorado changing the name of the company to the Telluride Power Transmission Company. Appellant Nunn was its manager.

Section 427, p. 614, 1 Col. Stat. 1893, among other matters provides that "When said corporation shall be created under the laws of this State for the purpose of carrying on part of its business beyond the limits thereof, such certificate shall state that fact." Subdivision 2 of this section provides that the object for which the company is created shall be stated. Section 498, authorizes Colorado corporations authorized to do business out of the State, to accept the laws of the other states and there exercise its franchise.

So it appears that the appellant company is a mining corporation organized in Colorado, without complying with the statute and with no other powers to do business as such in this State. Without complying with the Constitution and laws of this State with respect to foreign corporations, it unlawfully assumes to appropriate both land and water within this State. This must be so, because under section 2 article 12 of the Constitution of this State, no corporation in existence in this State when the Constitution is adopted shall have the benefit of its laws, without filing with the Secretary of State

an acceptance of the provisions of the constitution; and under section 6, no corporation organized out of the State shall be allowed to transact business in this State on conditions more favorable than those prescribed by law for similar corporations organized under the laws of the State. Under section 9, no corporation is allowed to do business in this State without having one or more places of business therein, with an agent upon whom process may be served, nor without first filing a certified copy of its articles of incorporation with the Secretary of State. Section 10 provides that no corporation shall engage in any business other than that expressly authorized in its charter or articles of incorporation.

Section 2293, C. L. U. 1888, as amended in 1896, and sections 351 and 352, Revised Statutes 1898, expressly embody these provisions of the Constitution, and prohibit foreign corporations from doing business in this State, unless they have complied with these requirements of the law; and any corporation failing to so comply with the provisions of the law is not entitled to the benefits of the law of this State relating to corporations.

The appellant corporation did not comply with the laws of this State, and has no power to engage in its business of mining, or to acquire any water rights under the laws of this State. A corporation of Colorado coming into this State can not bring with it powers with which it is not endowed in Colorado. It can only have an existence under the express laws of the State where it is created, and can exercise no power which is not granted by its charter or some legislative act. The appellant corporation never filed with the Secretary of State of the State of Utah, a copy of its articles of incorporation, by either name under which it was incorporated, and never accepted the laws or Constitution of Utah, nor has it appointed any agent or fixed any place of business within the State as required by law. The

defendant corporation, therefore, is not entitled to the benefit of the laws of this State, with reference to corporations. State v. So. Pac. Co., 28 So. Rep. 372; Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S. 1; Barse Live Stock Co. v. Range Valley Cattle Co., 50 Pac. 630 Utah.

Under section 2339, Revised Statutes, even if priority of possession of the property in question was shown in the defendant corporation, still its right to locate and use the water or land is not recognized or acknowledged by the laws of this State, and it was not in a position to question the right of the plaintiff in the premises.

5. Appellant Nunn was a resident of Colorado, the general manager, and in charge of the business of the defendant corporation, both in Colorado and Utah. The chief engineer, hydraulic engineer, and officers of the defendant corporation, including the president and attorneys, consulted with and acted with him with respect to the acts performed with reference to the appropriation of water and in making the improvements discussed by them at Hanging Rock, but no plan for a dam at Hanging Rock was ever actually made, and no dam was constructed there. Throughout the whole procedure the board of the defendant corporation was the controlling authority for, and with whom Nunn acted. If Nunn had any right, it was with reference to the smaller power located below. The dam at Hanging Rock was to be a larger power, and was talked about in the project, but it was not constructed, and the ownership, if in anyone, was in the defendant company, which was incapable of acquiring such ownership.

While the testimony is very uncertain, it sufficiently appears that whatever was done by Nunn in the appropriation of water, was done for the use and benefit of the defendant company, and he can not be treated as a personal claimant and owner of the easement and right of way in controversy as

against the right of way as acquired by respondent.

6.    It appears that Mr. Ferguson had settled upon one hundred and sixty acres of unsurveyed government land situated in the canyon in question above Hanging Rock, and resided there in 1895.    In August, 1896, defendant Nunn entered into a contract to purchase said land after Ferguson should thereafter acquire a homestead title.    In December, 1896, pending this action, Ferguson conveyed to Nunn whatever title he had in the land, and Ferguson occupied the land until his death in February, 1897, and his family afterwards succeeded to its occupation, and were made or became parties to the action to condemn.    So far as appears defendant Nunn was never in occupation of the land, or any land above Hanging Rock.    Under this conveyance, Nunn, not being a bona fide settler, nor in possession of the land, would take no right, except, possibly, the improvements, as against the right of way of the respondent.

Ferguson's deed to Nunn divested Ferguson of whatever possessory right he had in the land.    If the Ferguson heirs thereafter entered thereon in their own right, their possession only dated from the death of their father in February, 1897, long after the respondent's right of way was acquired.    The Ferguson heirs could not occupy the government land in their own right and for Ferguson or Nunn, nor could Nunn homestead this land by proxy.    A homestead or squatter's right is a personal right, and the possession under it must be personal. Not having obtained any right by contract or deed until 1896, after the commencement of this suit, and after the grant to the respondent had vested subject to the payment of damages to the rightful party in possession, if any, and not having possession, or the right of a bona fide settler under the Act of Congress, Nunn, under his deed, at most, simply had the right to enter upon the land and take the improvements.    Having no title or

possession Nunn was not entitled to damages.

As held in Conlan v. Quimby, 104 U. S. 420, a party settling upon unsurveyed government land who in good faith complies with the statutory requirements, is entitled, as against subsequent settlers to pre-empt the land, but would derive no right thereto by purchasing the claim of a prior settler, unless by actual entry at the proper office he had acquired some right thereto.

In the present case Nunn had made no entry at the proper office, and had no possession of the land or right of possession against the respondent. Frisbie v. Whitney, 9 Wall. 187; Yosemite Valley Case, 15 Wall. 77; Buxton v. Traver, 130 U. S. 232; Moore v. Besse, 43 Cal. 511; Sproat v. Durland, 35 Pac. 682.

Whether any damages accrued to the Ferguson heirs at the time the summons were served in September, 1896, under section 3599, C. L. U. 1888, and Roberts v. U. P. Ry. Co., 158 U. S. 1, we are not called upon to decide. The damages have been assessed by the jury and paid, and no appeal has been taken therefrom.

The appellants assign many errors upon the refusal of the court to instruct the jury as requested, upon the instructions given to the jury, and upon the facts found by the court. Under the view taken these questions become unimportant as neither of the appellants were injured in their rights; nor were either entitled to any damages under the facts shown in this case. The instructions were, at least, as favorable to the appellants as they had a right to expect.

Upon the whole record we find no reversible error. The judgment of the district court is affirmed, with costs.

*Bartch, C. J.;* and *Baskin, J.,* concur.