# THE GEORGE R. BARSE LIVE STOCK COMPANY, RESPONDENT, *v.* THE RANGE VALLEY CATTLE COMPANY AND J. M. DART, APPELLANTS.

RIGHT OF FOREIGN CORPORATION TO DO BUSINESS IN THIS STATE—CORPORATION RIGHTS TO SUE—CONSTITUTIONAL LAW—PLEDGE OF STOCK CERTIFICATES—TRANSFER OF STOCK ON BOOKS OF COMPANY—CHATTEL MORTGAGE OF STOCK.

1. Plaintiff, a corporation in Kansas, received, as security for a loan to one De Ricqles, 75 shares of stock in the defendant company, which was organized under the laws of, and did business in this state, with power to sell, etc., and to receive all dividends accruing to the stock. The stock was not transferred upon the books of the company, but both defendants had notice of the assignment and pledge of the stock; and, after notice, defendant Dart, on an execution against De Ricqles, sold the stock, of which plaintiff held the certificates, and had it transferred on the books of the company to himself. The court found the transactions on the part of Dart to be fraudulent, and that they left a cloud upon plaintiff's title to the stock. *Held* that, in suing defendant, plaintiff, as a foreign corporation, was not doing business in the state, within the meaning of the constitution, section 9, art. 12, or the statute, and was therefore not obliged to file a certified copy of its articles of incorporation with the secretary of state. The constitution prohibits corporations from transacting their ordinary corporate business within the state without first complying with its terms, and having one or more places of business,

with an authorized resident agent upon whom process can be served in cases of litigation between them and citizens of the state, and to protect citizens of the state against fraud and imposition of insolvent and unreliable corporations, and place them in a position to be reached by the legal process of the courts of the state, and was not designed or intended to prohibit the doing of one single act of business by such corpora_ tions, with no apparent intention to do any other act, or to engage in corporate business. The bringing of a suit by a foreign corporation to secure its legal rights, under the circumstances shown in this case, is not "doing business," within the constitution or laws of this state.

2. The delivery of stock certificates as security for a loan does not constitute a mortgage, but a pledge, and the provisions of the chattel mortgage statute of Utah do not necessarily apply; and the fact that no transfer of the stock was made on the books before the stock had been bought by the defendant Dart does not take away plaintiff's right to have the stock transferred to him, nor his right to receive dividends, since Dart bought the stock with full knowledge of the prior lien. Defendant therefore holds the stock thus wrongfully transferred to him on the books of the corporation, and for which plaintiff holds the certificates, in trust for the carrying out of the pledge or agreement between De Ricqles and the plaintiff.

3  *Notice of Prior Right—Purchase of Stock at Execution Sale.*
   Under section 2280, Comp. Laws Utah 1888, stock is deemed personal property, and may be transferred in such manner as may be provided in the agreement or by-laws. Under this statute the plaintiff's right to this stock was not affected by the subsequent sale on execution to Dart, who had full notice of plaintiff's right even though the transfer to him was not made on the books of the company. Under such circumstances a judgment creditor who buys with full notice of prior liens upon the property can obtain by his execution purchase no greater right or title therein than the debtor had or could claim.

(No. 854.   Decided Oct. 13, 1897.)

Appeal from the Third district court, Salt Lake county. Ogden Hiles, *Judge.*

Action by the George R. Barse Live Stock Commission Company against the Range Valley Cattle Company and J. M. Dart to compel a transfer of stock on defendant corporation's books to plaintiff, and free plaintiff's title to said stock from a cloud arising from a sale of the same to defendant Dart under execution in his favor. From a judgement for plantiff, defendants appeal. *Affirmed.*

*Charles J. Pence,* for appellants.

The right of Dart had ripened into a legal title and possession before any demand for transfer by the holder of the stock. *Abels* v. *Mobile Real Est., etc.* (Ala.), 9 South. Rep. 423; *Fiske* v. *Carr,* 20 Me. 301; *In re Murphy,* 51 Wis. 519; *Conway* v. *John,* 14 Colo. 30; *Colt* v *Ives,* 31 Conn 25; *Bullock* v. *Weber,* 35 Pac. 183; *First Nat. Bk.* v. *Hastings,* 42 Pac. 691; *Nat. Bank* v. *Folsom,* 38 Pac. 253.

MINER, J.:

This action in equity was brought by the plaintiff, a corporation organized and existing under the laws of Kansas, against the defendant, a corporation organized under the laws of Utah, and J. M. Dart, who was president of the defendant corporation. The court found, among other things: That on March 19, 1894, one A. E. De Ricqles was the owner of 75 shares of stock in the defendant company, of the par value of $100 each, evidenced by certificate of stock No. 36. That on the same day, at Kansas City, Kan., De Ricqles, by an assignment and indorsement in blank, pledged said certificate of stock to the plaintiff company as collateral security to secure the payment of two notes theretofore executed by De Ricqles to the plaintiff, as follows: One for $2,477.20, dated October 21, 1893, due March 4, 1894, with interest at 10 per cent.; the other for $3,238.85, dated March 18,

1894, due March 19, 1895, with interest at 10 per cent.,—and that no part of said notes had been paid. That De Ricqles pledged this stock to the plaintiff, with power to sell and dispose of it at public or private sale, without notice, and apply the proceeds to the payment of said indebtedness, and plaintiff was entitled to receive all dividends accruing on the stock. Both defendants had actual notice and knowledge of this pledge and agreement between De Ricqles and the plaintiff as early as the month of June, 1894,—long before the wrongful acts complained of. That on January 9, 1896, plaintiff, by its attorneys, presented to the defendant company the stock so pledged and indorsed, and offered to surrender the same for transfer to plaintiff on the books of the company, but defendant company refused to make the transfer on the books, for the reason that said shares of stock had been sold on execution, on a judgment in favor of defendant Dart against said De Ricqles, and that Dart had purchased said stock on execution, and had it transferred to him on the books of the defendant company. On the same day, plaintiff demanded from Dart said stock and all dividends he had received thereon, amounting to $4 per share, and subsequently demanded the further dividends received by Dart thereon, of $14 per share. That said Dart refused such demand. That on July 31, 1894, with actual knowledge and notice of said transfer to the plaintiff of said stock, defendant Dart took a note from De Ricqles for $3,896 in payment of the balance due said Dart from De Ricqles for the purchase price of said stock. That plaintiff knew nothing of said indebtedness until long thereafter, and had believed said De Ricqles to be the owner of the stock. That on the 26th day of October, 1895, said Dart recovered judgment on said note for $4,332.10, and had execution issued and levied upon said

stock standing on the books of the company in the name of De Ricqles, and the said Dart purchased the same at the execution sale, and had a new stock certificate issued to him thereon by the defendant company. That said Dart and the defendant company had due and actual notice at and before such execution sale that plaintiff held said stock as aforesaid, together with dividends paid thereon. That such certificate had upon its face the following provision: "Transferable on the books of the company by indorsement hereon and surrender of this certificate." That the by-laws of said company contain the following provision: "The stock may be transferred on the books of the corporation, upon indorsement and surrender of the certificate, and the secretary shall thereupon issue a new certificate therefor." The court found the transaction on the part of Dart to be fraudulent, and that such proceeding left a cloud upon the title of plaintiff to said stock and dividends. As conclusions of law, the court found that the plaintiff was entitled to said stock and dividends for the purpose for which it was assigned, and that said Dart holds whatever interest he may have acquired in said stock subject to the lien of the plaintiff, and in trust for the carrying out of the agreement between plaintiff and De Ricqles; that the plaintiff was entitled to a decree to compel said defendants to transfer said stock to plaintiff on the books of the company, free from any cloud, for the purposes aforesaid, and that said dividends so paid to defendant Dart by the defendant company be paid to the plaintiff, with interest; that Dart be entitled to the surplus arising from such stock and dividends after plaintiff's notes are paid. Judgment was entered for the plaintiff in accordance with the findings. This appeal is taken from the judgment.

The appellants contend that the plaintiff, being a for-

eign corporation, could not bring suit in this state without first filing with the secretary of state a copy of its articles of incorporation and by-laws. This complaint was filed January 20, 1896. Section 2392, Comp. Laws Utah 1888, in force in 1896, provides "that all foreign corporations not organized under the laws of Utah, now doing business in this territory, shall, within 60 days after the passage of this act, and all foreign corporations, within 60 days after the commencement of business in this territory, file with the secretary of the territory, and with the probate judge of the county wherein their principal office is situated, certified copies of their articles and certificates of incorporation and by-laws,   *   *   * and shall designate some person living in the county in which its proposed place of business in this territory is situated upon whom process may be served." Section 9, art. 12, of the constitution, in force January 4, 1896, provides "that no corporation shall do business in this state without having one or more places of business, with an authorized agent, or agents, upon whom process may be served, nor without first filing a certified copy of its articles of incorporation with the secretary of state." Section 4 of article 12 provides "that all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons." It will be conceded in the outset that, if the contract upon which the plaintiff's action was brought was made in violation of a law of the state, it cannot be enforced by any court in the state. So far as appears, plaintiff had no place of business, with an authorized agent upon whom process could be served, within the state, and had not filed a certified copy of its articles of incorporation with the secretary of state. The contract and notes upon which suit was brought were made in Kansas City, Kan., where

plaintiff conducted its business, and the notes were made payable there. The plaintiff had never done or contemplated doing any business in this state, except in bringing this action to enforce the contract and rights sued upon. Under these circumstances, was the bringing of this action to enforce the contract and obtain rights thereunder forbidden by the constitution and laws of this state, which provide that "no corporation shall do business in this state," etc. "To do business," as defined by Webster, is " to carry on any particular occupation or employment for a livelihood or gain, as agriculture, trade, mechanic arts, or profession; that which busies or occupies the time, attention, or labor of one." The statute applies to foreign corporations. The constitution applies to all corporations. In our opinion, the constitution, when reasonably construed, was intended to prohibit corporations from transacting their ordinary corporate business within the state without first complying with its terms, and having one or more places of business, with an authorized resident agent upon whom process could be served in cases of litigation between them and citizens of the state, and to protect citizens of the state against fraud and imposition by insolvent and unreliable corporations, and place them in a position to be reached by the legal process of the courts of the state, and was not designed or intended to prohibit the doing of one single act of business by such corporation, with no apparent intention to do any other act, or to engage in corporate business. The bringing of a suit by a foreign corporation to secure its legal rights, under the circumstances shown in this case, is not " doing business," within the constitution or laws of this state. In the case of *Manufacturing Co.* v. *Ferguson*, 113 U. S. 734, it is said: " The constitution requires the foreign corporation to have one or more known places of

16 UTAH—5

business in the state, before doing any business therein. This implies a purpose, at least, to do more than one act of business; for a corporation that has done but a single act of business, and purposes to do no more, cannot have one or more known places of business in the state. To have known places of business, it must be carrying on, or intending to carry on, business. The statute passed to carry the provision of the constitution into effect makes this plain, for the certificate which it requires to be filed by a foreign corporation must designate the principal place in the state where the business of the corporation is to be carried on." The general doctrine, as laid down in Thompson on the Law of Corporations (section 7936), is: "The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state, are not a doing or carrying on of business by the foreign corporation within the latter state, but that these prohibitions are leveled against the act of foreign corporations entering the domestic state by their agents, and engaging in the general prosecution of their ordinary business therein." *Bank* v. *Sherman*, 28 Or. 573; *Manufacturing Co.* v. *Ferguson*, 113 U. S. 727; *Gilchrist* v. *Railroad Co.*, 47 Fed. 593; *Colorado Iron Works* v. *Sierra Grande Min. Co.*, 15 Colo. 499; *Utley* v. *Mining Co.*, 4 Colo. 369; *Scruggs* v. *Mortgage Co.*, 54 Ark. 566; 6 Thomp. Corp. § 7936.

The appellants also contend that the stock was not transferred to the plaintiff on the books of the defendant company at the time of the levy of the execution, and that the indorsement and delivery of the stock to the plaintiff without a transfer of the stock on the books of the company was not a delivery within a reasonable time, within the meaning of section 2837, Comp. Laws Utah

1888, and the chattel mortgage acts. This stock was actu-
ally delivered to the plaintiff, with the indorsement of De
Ricqles thereon, to secure a *bona fide* debt; and defendant
had notice and knowledge of such transfer and pledge
of the stock before any note was given to Dart, and be-
fore any execution was levied upon the stock. In 1 Cook,
Stock, Stockh. & Corp. Law, § 463, the following rule is
laid down: "A mortgage of stock, however, is not often
made, and unless there is a clear intent to the contrary
the courts will treat the transaction as a pledge, rather
than a mortgage. In fact, it is difficult to ascertain from
the cases how shares of stock may be mortgaged, and a
few early decisions which held certain transactions to be
mortgages would to-day be held to be pledges.    *    *    *
Where, on the other hand, the certificate of stock is de-
livered to the creditor as security, it is evident that
possession of the property is given to the creditor, but
that the debtor still considers the stock to be his. Such a
transaction is a pledge, and not a mortgage; and conse-
quently, since the giving of stock certificates as security
is almost invariably effected by a delivery of the certifi-
cates, a mortgage of stock may be said to be possible, but
not probable, or even sensible. The delivery of a certifi-
cate of stock with a blank power of attorney, as collateral
security, constitutes a pledge, and not a mortgage; and
the same rule prevails even though an absolute transfer
or registry is made on the corporate books." In this case
there was a pledge of the stock to the plaintiff. Under
such circumstances, the provisions of the chattel mort-
gage statute do not necessarily apply. By the delivery of
the stock to the plaintiff as security, the possession of the
property was given to the creditor. The change of posses-
sion was actual and continuing. The fact that the stock
still remains on the books of the company in the name of

De Ricqles cannot be considered fatal to the plaintiff's claim, because both the defendants had actual notice of plaintiff's right to the stock many months before Dart commenced his suit or levied upon the stock. The delivery and indorsement of the stock certificate to the plaintiff as collateral security constituted a pledge of the stock to the plaintiff, and not a mortgage. In the absence of fraud, whatever rights Dart may have obtained to the stock are subject to the prior rights and equities of the plaintiff, and must be considered as held by Dart in trust for the carrying out of the pledge and agreement between De Ricqles and the plaintiff. The dividends declared during the continuance of the pledge belong to the pledgee, even though the latter is not registered as owner on the corporate books. 1 Cook, Stock, Stockh. & Corp. Law, § 468. In several states the statutes provide that a transfer of stock shall be void unless transferred upon the books of the company. Under these jurisdictions it is held in some states that a transfer not made upon the books is void as to attaching or execution creditors. In Utah, section 2280, Comp. Laws 1888, provides that stock shall be deemed personal property, and may be transferred in such manner as may be provided in the agreement or by-laws. On principle, it is clear that a judgment creditor who buys with the full knowledge of prior liens upon the property can obtain by his execution purchase no title or rights therein beyond those the debtor had or could claim. We see no reason, under our statute, why the same rule will not apply to the sale of stock upon execution, when the circumstances are as presented here. Dart was not an innocent purchaser, but had full notice and knowledge of the previous transfer of the stock to the plaintiff. He was president of the defendant company, and was in no way misled as to the rights of the plaintiff. We are of the

opinion that the plaintiff's rights to the stock were not affected by the subsequent sale on execution, even though the transfer was not made on the books of the company. *Weston* v. *Mining Co.*, 6 Cal. 425; *Blakeman* v. *Iron Co.*, 72 Cal. 321; 1 Cook, Stock, Stockh. & Corp. Law, § 487; *Cheever* v. *Meyer*, 52 Vt. 66; *Finney's Appeal*, 59 Pa. St. 398; *Turnpike Co.* v. *Gerhab* (Pa. Sup.), 13 Atl. 90; *Kellogg* v. *Stockwell*, 75 Ill. 68; *Gemmell* v. *Davis* (Md.), 32 Am. St. Rep. 416, and note to *Griggs* v. *Day* (N. Y. App.), Id. 715; *Guarantee Co. of North America* v. *East Rome Town Co.* (Ga.), 23 S. E. 503.

The stock and dividends were properly identified, and should be made subject to the equities which were clearly imposed upon them at the time. Dart, with full knowledge of these equities, took and received them under his execution.

The demurrer interposed by the appellants was properly overruled. We find no error in this record. The judgment of the court below is affirmed.

ZANE, C. J., and BARTCH, J., concur.