## A. BOOTH & CO. v. WEIGAND.*

No. 1640.   Decided January 3, 1906 (83 Pac. 734).

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN STATE.—The doing of a single act or the making of a single contract by a foreign corporation in the line of its business within the state, without having complied with the statutes regulating foreign corporations, does not constitute "doing business" within the state, within Constitution, article 12, section 9, prohibiting corporations from doing business in the state without having a place of business, with an agent on whom process may be served, and without first filing a certified copy of articles of incorporation with the secretary of state.

2. SAME — ASSIGNMENTS — EXECUTED CONTRACTS—RIGHT TO SUE.— Constitution, article 12, section 9, prohibits corporations from doing business within the state without having a place of business, with an agent on whom process may be served, and without first filing a certified copy of articles of incorporation with the secretary of state. Revised Statutes 1898, section 351, requires foreign corporations to file a certified copy of their articles with the secretary of state, etc., and section 352 provides that foreign corporations failing to comply shall not be entitled to the benefits of the corporation laws of the state. *Held*, that the term "benefits" did not include the right to sue, and that a foreign corporation, not having complied with such sections, was not thereby precluded from maintaining a suit against a citizen on a contract made in Utah and executed on the part of the corporation, which was not illegal in itself, and on claims of others assigned to it not in the ordinary course of its business.

BARTCH, C. J., dissenting.

On rehearing.   Former decision annulled.

Judgment affirmed.

For former opinion, see 79 Pac. 570, 28 Utah 372.

*W. R. Hutchinson* for appellant.

*S. P. Armstrong* for respondent.

* Validity of contracts of foreign corporations before getting permission to do business, see note, 1 L. R. A. N. S. 1041, and note, 24 L. R. A. 316.

STRAUP, J.

1. The respondent, plaintiff below, is a corporation organized under the laws of the state of Illinois. It brought an action against appellant, defendant below, on three counts or causes of action—the first for goods sold and delivered by it to the appellant; the second and third on assigned claims for goods sold and delivered to appellant by the Cudahy Packing Company, a corporation, and by E. G. Hines, doing business as Hines Mercantile & Commission Company. The defendant answered, alleging that the plaintiff had not legal capacity to sue on any of the causes of action, on the ground that it was a foreign corporation and had not complied with the laws of this state permitting foreign corporations to do business within its borders, and that it was conducting at Salt Lake City a general mercantile business of buying and selling at retail fish, game, and poultry, and there maintained an office and principal place of business. As a further defense to the first cause of action it was alleged that the goods were sold and delivered whilst it was engaged in such business. As a further defense to the second and third causes it was alleged that at the time of the assignments by the Cudahy Packing Company and by Hines of their claims to plaintiff it was, unlawfully and in violation of the statutory and constitutional provisions of the state permitting foreign corporations to do business, engaged in said fish, game, and poultry business; but it was not alleged that the claims or the assignments thereof were in any manner connected with said business, or in anywise grew out of the same, or were at all related thereto; nor was it alleged that the business conducted by the said assignors was in any particular unlawful or wrongful, or that either of the assignors had violated any provision of law. The lawful status of the assignors and of their business is unquestioned. Plaintiff's demurrer to this answer being sustained, and the defendant declining to further answer, judgment was entered for plaintiff.

The defendant appealed therefrom, and at the October term, 1904, this court decided that none of the said contracts could be enforced in the courts of this state by the plaintiff

because of its noncompliance with the following constitutional and statutory provisions: Article 12, section 9:

"No corporation shall do business in this state, without having one or more places of business, with an authorized agent, or agents, upon whom process may be served; nor without first filing a certified copy of its articles of incorporation with the secretary of state."

Section 351, Revised Statutes 1898:

"All corporations, not organized under the laws of this state, before doing business within the state, shall file with the Secretary of State," etc., "a certified copy of their articles of agreement, a certificate of incorporation, and by-laws, etc., and shall also, before doing business within the state, by resolution, etc., accept the provisions of the Constitution of this state, and designate some person residing in the county in which its principal place of business in the state is situated upon whom process, etc., may be served."

Section 352, Rev. St. 1898:

"Any such corporation failing to comply with the provisions of the foregoing section shall not be entitled to the benefits of the laws of this state relating to corporations; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions, shall be deemed guilty of a misdemeanor and shall be personally liable on any and all contracts made in this state by him for and in behalf of such company during the time that it shall remain so in default," etc.

The following constitutional provisions were also referred to: Article 12, section 1:

"All corporations doing business in this state, may, as to such business, be regulated, limited or restrained by law."

Section 4:

"All corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons."

The case is reported in 28 Utah 372, 79 Pac. 570.

A petition for rehearing having been granted, the matter is again before us for review. We are persuaded that the for-

mer decision is erroneous, and is against the weight of authority, especially as to the second and third causes.

2. It is well first to notice the principal cases cited in support of the former decision:

*Paul v. Virginia,* 8 Wall. 168, 19 L. Ed. 357, is cited and quoted from. In that case, Paul, a resident of Virginia, and an agent of a New York Insurance company, was convicted in the state court for engaging in the insurance business without a deposit bond as required by the statute. He appealed to the Supreme Court of the United States, attacking the validity of the statute, and denying the power of the state to pass such a law.

The case of *Pembina Min. Co. v. Pennsylvania,* 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650, cited, was one where a mining company, a corporation under the laws of Colorado, and there having its principal office, was assessed a tax for "office license" in the state of Pennsylvania. The validity of the act authorizing the state to make such assessment was assailed and claimed to be unconstitutional. It is readily perceived that these cases presented altogether different questions from the one here under consideration. Inasmuch as the right of the state to impose conditions upon which foreign corporations may do business within its borders is conceded in this case, and the validity of neither the constitutional nor statutory provisions is questioned, these cases are of no importance in the determination of the real question before us, which is, as to the second and third causes: Does our Constitution or statute in effect declare that a contract is void, or non-enforceable by a foreign noncomplying corporation, when made by it within the state and when relating to single or isolated transactions, and, as to the first cause, is such a contract void or nonenforceable by it, when relating to and growing out of general business transacted by it within the state?

*Barse Live Stock Co. v. Range Valley Cattle Co.,* 16 Utah 59, 50 Pac. 630, cited, is a case where plaintiff, a foreign corporation, brought an action against appellants to compel them to transfer to it on the books certain stock claimed to have been assigned, and to recover dividends that had been paid

thereon. Its right to maintain the action was questioned because of its non-compliance with the enabling statute, but the claim was held untenable. Confined to the actual point decided and before the court, the decision is an authority here for the respondent on the second and third causes, and is not an authority against it on the first, because the question involved was not before the court.

In the case of *Railroad v. Telluride Power Co.,* 23 Utah 22, 63 Pac. 995, cited, the claim was made that the power company, a Colorado corporation, was not organized in compliance with the laws of that state, and had not conferred upon it the power to acquire and hold the subject-matter of the litigation; and the question decided was that

"A corporation of Colorado coming into this state cannot bring with it powers with which it is not endowed in Colorado. It can only have an existence under the express laws of the state where it is created, and can exercise no power which is not granted by its charter or some legislative act."

The case of *Miller v. Ammon,* 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, cited, involved the validity of an ordinance and the right to recover for liquor sold in violation of its terms. But, as was well said in that case, "the liquor traffic is freighted with peril to the general welfare, and the necessity of careful regulation is universally conceded." There the business itself was injurious to health, and affected morals and society, and, because of those evils, it was legislated against and restricted. Here the business was not only innocent, but was in aid of the necessities of life. This distinction, well recognized in most cases, has in some not been fully observed, and may account for some of the diversity of opinion upon this question.

The case of *Electric, etc., Co. v. Perry* (C. C.), 75 Fed. 898, cited, is somewhat similar, for there the corporation brought an action against the chief of police and constables to restrain them from interfering with its business of pool selling in violation of law.

The case of *Crefeld Mills v. Goddard* (C. C.), 69 Fed.

141, cited, was upon a statute which expressly provided that any foreign corporation doing business in the state (New York) without complying with the statute "shall maintain no action in this state upon any contract made by it in this state." The difference between that statute and ours is readily perceived. Whenever the statute has expressly declared that the contract is unenforceable, that, of course, is the end of the controversy. Such a statute is self-construing, and the court has no other duty than to give it effect.

The case of *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, cited, is an authority for the respondent so far as it goes. There, the noncomplying foreign corporation made a contract in the state of Colorado and there brought an action upon the contract. Upon the questions being raised that the corporation had not the right to maintain the action, and that its contract was void because of its noncompliance with the enabling statute, it was held that the contract was valid, and that the corporation had the right to maintain its action thereon.

The cases of *Cincinnati, etc., Co. v. Rosenthal,* 55 Ill. 85, 8 Am. Rep. 626, and *Thomas v. Travelers' Ins. Co.,* 80 Pa. 15, 21 Am. Rep. 89, are also cited. They may be said to support the decision, especially as applied to the first cause of action; and yet there are dissimilarities when the difference between executory and executed contracts and statutory restrictions of a particular kind of business or specified things are considered. In the first case the statute provided that it should not be lawful for any agent of a foreign insurance company "to directly or indirectly take risks, or to do or transact any business of insurance in this state" without first procuring a certificate, etc. Without complying with the statute the agent insured a citizen of Illinois, who gave his promissory note in payment of premiums. In an action on the note by the company it was held that the contract was void, because of the noncompliance with the statute. The statute was directed against a particular kind of business, and the doing of specific acts and things was made unlawful. The giving of the note was with respect to these specific things denounced

by the statute. It will also be observed that there the contract was executory on the part of the company seeking to enforce it. Here the contract was fully executed on the part of the plaintiff, and the consideration thereof accepted and retained by the defendant. Much to the same effect is the cited Pennsylvania case.

The cases cited from Alabama support the decision; but these cases have been criticised. In speaking of them, and other like cases, Mr. Thompson, in his Commentaries on the Law of Corporations (volume 6, section 7955), says:

"It cannot escape attention that these decisions ignore the distinction, often taken by enlightened courts in respect to the validity of contracts, between contracts which are merely *malum prohibitum* and contracts which are *malum in se*. Such decisions put the contracts under consideration, although perfectly innocent and meritorious in themselves, on the footing of contracts which are essentially criminal, corrupt, or fraught with moral turpitude, or otherwise opposed to the public policy of the State. In leveling such contracts to this ground, and in allowing their own citizens to repudiate them on such a plea while keeping the consideration, the courts degrade the commercial morals of the people, encourage general dishonesty, expel capital from the state, and bring its judiciary into deserved disrepute."

3. It of course is conceded that there is a conflict of authorities upon this question, and that there are authorities which support the decision, especially as to the first cause of action. There are, however, certain recognized principles underlying most of the decisions. They are: That by the law of comity among nations a corporation created by one sovereignty is permitted to make contracts in another and to sue in its courts, and the same law of comity prevails among the several states of the Union. That the state may prescribe the terms and conditions upon which a foreign corporation may be permitted to carry on its business within its borders. When, by express terms, it has been declared by the state, or where such an intention is clearly manifest from the language used, that contracts, made within the state by a foreign corporation in the course of business within the meaning of constitutional and statutory provisions without complying therewith, are void or unenforceable, and no action can be main-

tained thereon by the noncomplying corporation, at least so long as such noncompliance exists. That in each case it is the intention of the Legislature, rather than the letter of the statute, which controls. The question before us is therefore to be determined by ascertaining the meaning of the statute and the Constitution, and by determining whether it was the intention of the lawmakers in effect to declare void contracts made in the state by foreign noncomplying corporations. As to the contracts of the second and third causes of action, the solution is not difficult; for the taking of the assignments or the bringing of an action on the assigned claims was not "doing business" within the meaning of the constitutional or statutory provisions. The business conducted by respondent, as alleged in the answer, was that of buying, selling, and retailing fish, game, and poultry. It is not alleged that the claims or the assignments had any connection therewith. So far as made to appear, they were wholly independent thereof. Of course, if respondent had been engaged in the business of buying claims, or in the collection business, and the assignments were had in pursuance thereof, it would be different. The words "doing business," as used in these provisions, refer to a general transaction of business, and not to an isolated transaction, or to single, or wholly collateral acts. The statute obviously relates to some regular or customary business. (*Barse Live Stock Co. v. Range Valley Stock Co.,* 16 Utah 59, 50 Pac. 630; *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; *Colo. Iron Wks. v. Sierra Grande Min. Co.,* 15 Colo. 499, 25 Pac. 325, 22 Am. St. Rep. 433; *Florsheim Bros. Dry Gds. Co. v. Lester,* 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162; *Gilchrist v. Helena, etc., Co.* [C. C.] 47 Fed. 593; Elliott, Priv. Corp. [3 Ed.] p. 271, and cases. Note to *Cone Export & Commission Co. v. Poole,* 24 L. R. A. 289.) The taking of the assignments and the bringing suit thereon by the respondent, being wholly independent of its business, renders the transaction the same as though a foreign corporation had acquired claims by assignment without the state and brought suit thereon, or as of any noncomplying foreign cor-

poration's making a contract within the state involving isolated transactions or single acts, and maintaining an action thereon. As to such matter, the foregoing authorities demonstrate that it is not "doing business" within the meaning of like statutes.

Whether the contract relating to the first cause of action is void or unenforceable by respondent presents a question which is more difficult; but the decided weight of authority and the trend of later cases are to the effect "that the failure of the foreign corporation to comply with the domestic statutes prescribing the conditions upon which it shall be permitted to do business within the state does not render its contracts made therein void and nonenforceable, or prevent it from maintaining an action against the domestic citizen thereon, unless the statute so states in express language." 6 Thomp. Com. L. of Corp., sec. 7957, and cases. Unless such an intention is clearly expressed in the statute the courts will not hold such contracts void or nonenforceable. They will not do so by implication from loose and indefinite language. The primary object and evident purpose of the statute are to subject foreign corporations to the jurisdiction of our courts, to the inspection and supervision of the officers of our state, and to acquaint them and the citizens dealing with the corporation of its nature and powers. They are not to invalidate acts or contracts of such noncomplying corporations, nor to afford the citizen of the state an opportunity to avoid his contracts made with it, nor is the nullification of his contract or of acts done in pursuance thereof the remedy for the violation of the statute. The state is authorized to enforce the statute, and may do so by proper proceedings on its behalf. Section 3610 and 3611, Revised Statutes 1898. That, together with the penalty imposed for its violation, no doubt was deemed sufficient by the Legislature to accomplish the purpose of the statute, and it is not for the judiciary at the instance or for the benefit of private parties to inflict the additional and harsh penalty of forfeiture by striking down contracts and acts not evil in themselves, especially when, as here, the contract had been fully executed on the part of the corporation,

and the consideration thereof accepted and retained by the citizen. The following authorities fully sustain us: 2 Morawetz, Priv. Corp. [2 Ed.], section 665; 6 Thomp. Com. L. of Corp. 7957; Taylor, Priv. Corp. [3 Ed.], section 401; Elliott, Priv. Corp. [3 Ed.], sections 268, 269; *Nat. Bank v. Matthews,* 98 U. S. 621, 25 L. Ed. 188; *Fritts v. Palmer,* 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317; *Bedford v. E., etc., Loan Ass'n,* 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; *Blodgett v. Lanyon Zinc Co.,* 120 Fed. 893, 58 C. C. A. 79; *Caesar v. Capell* [C. C.], 83 Fed. 403; *Washburn Mill Co. v. Bartlett,* 3 N. D. 138; 54 N. W. 544; *Kindel v. Lithographing Co.,* 19 Colo. 310, 35 Pac. 538, 24 L. R. A. 311; *Wright v. Lee,* 4 S. D. 237, 55 N. W. 931; *Toledo Tie & Lumber Co. v. Thomas,* 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925; *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327; *Fire Engine Co. v. Town of Mt. Vernon,* 9 Wash. 142, 37 Pac. 287, 38 Pac. 80; *Tabor et al. v. Goss & Phillips Mfg. Co.,* 11 Colo. 419, 18 Pac. 537; *Tolerton & Stetson Co. v. Barck,* 84 Minn. 497, 88 N. W. 19; *Larned v. Andrews,* 106 Mass. 435, 8 Am. Rep. 346; *Hartford Ins. Co. v. Mathews,* 102 Mass. 221; *Vermont Loan & Trust Co. v. Hoffman,* 5 Idaho 376, 49 Pac. 314, 37 L. R. A. 509, 95 Am. St. Rep. 186; *Mandlebaum v. Gregovich,* 17 Nev. 87, 28 Pac. 121, 45 Am. Rep. 433.

In view of the foregoing authorities it is not reasonable to presume that the Legislature intended to make void and unenforceable contracts like these under consideration. It is claimed, however, that the respondent was procluded from at all contracting in this state, whether on a single transaction or in course of its general business, and was forbidden from suing on such a contract because of the provision.

"Any such corporation failing to comply with the provisions of the foregoing section shall not be entitled to the benefits of the laws of this state relating to corporations."

We have already shown, as to the second and third causes of action, the matter alleged did not constitute "doing business," within the meaning of the statute, hence they are not

affected by the cause referred to. To say that the clause rendered the contract of the first cause of action void, and forbade respondent's suing thereon, we are obliged to do so by implication from loose and uncertain language. Because of its noncompliance with the statute, to say that the respondent shall not have the "benefit" to make a contract, or to sue in the courts of this state, is a meaningless expression. These things are not "benefits." The making of a contract involves power and capacity; suing thereon, a right. Unless a very unsatisfactory and loose definition is given the word "benefits," these things cannot be embraced within it. Whether the respondent had the power and capacity to contract is dependent upon its charter or the legislative act creating it. To construe this clause to mean that a noncomplying foreign corporation cannot sue in our courts is to deny such right to all such corporations, whether the contract was made here or elsewhere; in this case, whether the goods were sold without the state or sold within it. Surely such consequences were not contemplated by the Legislature, and, if so, it would have been against the express provisions of the Constitution giving the right to all corporations, without condition or limitation, to sue in our courts. It is somewhat difficult to understand just what the Legislature intended by the said clause, but it is quite clear no such consequences as these were intended.

Reference to the history of legislation upon this subject will, to some extent, account for the use of the term "benefits" in the statute. The territorial law (section 2293, Comp. Laws 1888) was:

"Any such corporation failing to comply with the provisions of this section, shall not be entitled to the benefits of the laws of this territory, limiting the time for the commencement of civil actions."

In this connection the use of the word "benefits" was appropriate and expressed sense. After statehood (Sess. Laws 1896, p. 308, c. 87), this particular clause was amended by changing the expression "of the laws of this territory limit-

ing the time for the commencement in civil actions" to that "of the laws of the state relating to corporations." When used in this connection the word "benefits" renders the meaning incongruous and obscure. With such amendment the law was inserted in the Revised Statutes of 1898. Looking at the statute relating to corporations we find a chapter on general incorporation, prescribing the nature of articles of agreement, powers of the corporation, including those to contract and to sue and be sued, power's and duties of officers relating to stock, stockholders, and meetings, amendments, etc., corporations not for pecuniary profit, the sections relating to foreign corporations above quoted; a chapter on assessments; one on banking corporations and banks; one on building and loan associations; one on loan, trust, and guaranty associations; and one on railroad corporations. All these relate to the manner of incorporating, to prescribing powers and duties, and imposing conditions and restrictions and the like; but nowhere is there found anything with reference to benefits, unless it can be said the whole and every part of the title is embraced and meant to be within the term. To give it such a meaning leads to the conclusion that a foreign corporation cannot sue a citizen of this state in our courts on a contract made or obligation incurred wholly without the state without first complying with the enabling statute. To say it may maintain such an action, but may not maintain an action on a contract made by it within the state, is to make a distinction not made by the statute, if the word "benefits" is to be given the meaning contended for. If suing is a "benefit," and the right to sue at all is denied to all noncomplying foreign corporations, why say they may sue on a contract made or obligation incurred wholly without the state, but may not do so if it is made or incurred within the state? To say it does not mean to restrict the right to sue, but does mean that such a corporation cannot make a valid contract within the state, why single that out from all the many other provisions of the title, or why exclude the one relating to "sue and be sued?" The difficulty is, we are dealing with a common term, "benefits," which does not properly describe or embrace the things being con-

sidered, the power of contracting and the right of suing, and thus we are whirled into obscurity.

If the Legislature intended to deny non-complying foreign corporations the power or capacity to contract in this state, or to deny them the right to maintain an action in our courts upon contracts growing out of business conducted by them in this state, it well could have said so in terms of no uncertain meaning, and should not have left it to conjecture and speculation. Until the Legislature has expressed such an intention in clear and express terms, or until such an intention is otherwise clearly manifested, we may well presume no such consequences were intended; and we are neither authorized nor disposed to ingraft them upon a statute of such doubtful language and elastic meaning as is the clause referred to. The authorities all recognize that the purpose of these constitutional and statutory provisions is not designed or intended as a prohibition upon foreign corporations to contract in the state, to the extent of declaring such contracts void and nonenforceable. Until the Legislature shall do so, we are unwilling to give the citizen the right to discharge an innocent contract made by him with a noncomplying corporation and to avoid his obligation thereon or to prohibit its enforcement, especially when, as here, the contract on the part of the corporation is fully executed and the citizen has received and retained the consideration thereof, merely upon the ground that the corporation failed to perform "a duty that it owed to the state at large, but the nonperformance of which in no manner prejudiced him." (*Washburn Mill Co. v. Bartlett,* supra.)

It has been said, and is often expressed in the cases, that a contract made in violation of law, or made to do an act expressly forbidden by a statute, is void, and cannot be enforced. This is true, whether the act is forbidden because of an attached penalty, or because otherwise forbidden by clear terms of the statute. These principles of law are conceded,

"But in determining the purpose of the enactment courts consider the nature of the forbidden act, for the very obvious reason that when such act is immoral or criminal in its nature, or dangerous to life,

health, or property, the presumption must prevail that legislative wisdom intended to stamp it out; while, if the act be innocent in itself and in its consequences, no such presumption necessarily arises." (*Washburn Mill Co. v. Bartlett,* supra.)

Notwithstanding these general principles, it is also true

"That if it is manifest from the language of the statute, or from its subject-matter and the plain intent of it, that the act was not to be made void, but only to punish the person doing it with the penalty prescribed, it is equally clear that the courts would readily construe the statute in accordance with its language and its plain intent. We are, therefore, brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and construe the statute accordingly." (*Pangborn v. Westlake,* 36 Iowa 546.-)

Considering the purpose and object of the enactment of the statute as heretofore observed, it is quite clear that the Legislature did not intend to render void and unenforceable the contracts under consideration. Where, as here, the contract itself being innocent and concerning a subject-matter itself harmless and lawful, and being fully executed upon the part of the corporation and the consideration thereof retained by the citizen, he will not now be heard to defend against its enforcement, and be permitted to nullify his just obligation with respect to it, solely upon the plea of the noncompliance of the corporation with the enabling statute. No court has gone to any greater extent than have the courts of Alabama in holding contracts of noncomplying corporations void, yet that court refused to entertain the defense when the contract was fully executed upon the part of the corporation. It was said:

"If the contract were executory, and it were shown the company had failed to comply with the requirements of the section of the Code above referred to, there could be no question but that, under our adjudications, there could be no recovery on the notes. But plaintiff, however, testified to a state of facts which, if true, takes these notes out from the in-

fluence of those decisions, and places them under the influence of others which hold that, where the contract has been executed, there can be no relief granted, because the transaction originated with a foreign company, which had not complied with our laws." (*Russell v. Jones,* 101 Ala. 261, 13 South. 145.)

When due regard was given to the distinction between executory and executed contracts, and to the difference between contracts when relating to things or acts themselves unlawful, or immoral, or opposed to public policy, or to a particular kind of business, or to specific things or acts restricted or forbidden by statute, and when relating to things or acts innocent and lawful within themselves, much of the apparent conflict among the decisions disappears.

Our conclusion, therefore, is that the court below properly sustained the demurrer; that the order of this court, made in the former opinion, reversing the judgment below, is vacated; and that the judgment of the court below should be, and hereby is, affirmed, with costs.

McCARTY, J., concurs.

BARTCH, C. J. (dissenting).

I cannot concur with the majority in overruling the former decision of this court on the rehearing. After further careful consideration of this subject I am convinced that the principles adopted and announced in the former opinion are not only strictly in harmony with the mandatory and prohibitory character of our constitutional and statutory provisions, but also in strict conformity with the policy of our laws, which is that foreign corporations shall not be permitted

"To transact business within the State, on conditions more favorable than those prescribed by law for similar corporations organized under the laws of this state." (Const., art. 12, section 6.)

Under this opinion of the majority, it is manifest that foreign corporations, or individuals through foreign corporations have advantages in the state which domestic corporations, or citizens desiring to transact business through domestic corpo-

rations, do not possess. For instance, suppose an aggregation of individuals, citizens of this state, desiring to conduct and transact a certain line of business within our borders, and for that purpose, would enter into and adopt articles of agreement and by-laws, and form an organization, but would not file in the proper offices any copy of such articles of agreement and by-laws, or obtain any certificate of incorporation from the proper officer, and would not pay to such officer any of the fees exacted by the state as a condition precedent to authorization for the transaction of corporate business; could it be contended for a moment that such an association of individuals would have constituted itself a legal entity entitled to the benefits of our laws relating to corporations? Would not such an entity, in an attempt to enforce its contracts in the courts, be regarded as at most but a partnership, without any rights and privileges as a corporate body? Surely the courts could not recognize such an association as a corporation, so long as it persisted in violating the laws, nor until it had complied with the corporate laws. And yet, under the decision on this rehearing, if the same number of individuals come to this state, styled a foreign corporation, they in effect at once become a corporate entity, endowed with all the rights and privileges of a corporation, and entitled to the benefits of our corporate laws, and can open up a regular place of business and carry on business without filing any evidence of existence as a legal entity in any office in this state, or designating any person on whom process can be served, and without paying any fees imposed by the state as a condition precedent to the conducting and carrying on of business—such fees as are required to be paid by corporations to aid in defraying the expenses of the government, whose protection both classes of corporations alike invoke while engaged in business here. It is clear, therefore, that a foreign corporation can obtain benefits and advantages over domestic corporations by a violation of our laws, and thus can establish and transact business on more favorable terms than can corporations which are organized under and comply with the laws of this state. This places persons who violate the law upon more favorable footing than those

who obey its mandates. Such is the sequence from the strange and strained construction of the majority placed upon the perspicuous language employed by our lawmakers.

Notwithstanding that in the majority opinion much space is devoted in an effort to render meaningless, loose and uncertain the statutory provision, "any such corporation failing to comply with the provisions of the foregoing section shall not be entitled to the benefits of the laws of this state relating to corporations" (section 352, Revised Statutes 1898), it does not seem difficult to comprehend its meaning. It is clear in thought and to the understanding. The words employed are plain and simple, and in interpretation, under familiar rules of construction, ought to be given the sense in which they are ordinarily used and understood in common parlance, and not be made to apply to, or be confused with, a state of things to which they have no reference, and which was manifestly not in the mind of the Legislature at the time of the enactment. Nor does it seem difficult to comprehend the meaning of the word "benefits," as used in the quotation. I apprehend that ordinarily, when we speak of benefits to us, we mean and refer to what is advantageous to us—whatever promotes our prosperity, happiness, or enhances the value of our property, or property rights, or rights as citizens, as contradistinguished from what is injurious. So, when we speak of "benefits," with reference to laws relating to corporations, we mean the advantages which accrue from the right to invoke and enforce, through proper tribunals, such laws as a means to promote the prosperity of corporations. Now, certainly, the right to sue in our courts is a benefit or advantage to a corporation doing business within our borders, the opinion of the majority to the contrary notwithstanding, because it enables it to enforce its contracts and is thus conducive to its prosperity. So, likewise, is the right to make contracts within the state which may be enforced here. These are instances of benefits or advantages, and are unquestionably, as is apparent from the context of the statute, included within the meaning of the term "benefits" as employed in the statute; but a foreign corporation has no inherent right to them, for, in the very nature of

things, no state is compelled to confer benefits upon a creature of a foreign state or country, and hence, if another state confers benefits upon such a creature, it may do so upon such terms and conditions as it chooses. When, therefore, the state, through its Constitution and statutes, says that no foreign corporation shall be entitled to the benefits of our corporate laws if such corporation has failed to comply with certain specific provisions of our laws, it means that it shall not be entitled, among other things, to sue in our courts upon its contracts made in opposition to law, or contracts made while carrying on business within the state without a compliance with certain prescribed precedent conditions, and in violation of our laws.

This is a logical sequence from the Constitution itself, which, in article 12, section 9, says:

"No corporation shall do business in this state, without having one or more places of business, with an authorized agent or agents, upon whom process may be served; nor without first filing a certified copy of its articles of incorporation with the Secretary of State."

These provisions are mandatory and prohibitory, not only in form but by express provision of the same instrument, where, in article 1, section 26, it declares:

"The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

The provisions under consideration are not declared to be otherwise. So, the legislative enactments in question are mandatory and prohibitory in form and as appears from the context. When the statutory provision above quoted is read in connection with the preceding section (section 351, Revised Statutes 1898), and other provisions of the laws, constitutional and statutory, upon this subject, there will readily be perceived an obvious intention on the part of the Constitution and lawmakers to compel a compliance with our laws by foreign corporations, the same as is required by domestic corporations, before establishing and conducting any kind of a business within this state in a corporate capacity. It is use-

less, therefore, to obscure and confuse this case, where the foreign corporation had in fact located within our borders, secured a place of business, had established and was actually conducting its business, when, in the regular course of its business, the transactions in controversy took place, with a case of a single transaction, or a number of single transactions, by a foreign corporation which never located here, never established a place of business here, and never conducted any continuing business here. No one contends that a single transaction made by a citizen of this state with a foreign corporation through its foreign office or place of business is not binding upon the parties without the corporation previously filing its articles here and paying the fees.  Such a transaction, if otherwise valid, would be enforced by the comity of the state. This, however, is not a question of a single transaction, and therefore, in disposing of this case, an argument based on the case of a single transaction or a number of single transactions serves, like the wandering meteor, but to mystify and mislead.

Nor is it material that several of the transactions in controversy consisted of assignments of claims, since such assignments were made in the course of the business which was being conducted in violation of law.  In the present prevailing opinion it is said:  "The state is authorized to enforce the statute, and may do so by proper proceedings on its behalf." (Secs. 3610 and 3611, Rev. St. 1898.)  But no "proper proceedings" for the state to pursue are pointed out, (secs. 3610 and 3611, cited by the majority applying only to corporations organized under the laws of this state), and the remedy or penalty prescribed by statute against the offending foreign corporation is that, if it fails to comply with the conditions precedent to its doing business here, it shall not be entitled to the benefits of our corporate laws.  But this court now in effect says that, notwithstanding such a corporation carries on and transacts business in violation of our laws, it shall be entitled to the benefits of our corporate laws.  How, then, can the state enforce the statute ?  The other penalties of the statute are prescribed simply against the person acting as agent

in the unlawful conduct of business, and do not affect the corporation itself. The fact is that this decision appears to me much more indicative of concern about the promotion of the material interests of a foreign law-defying institution than about equal justice to a domestic corporation, or to our own citizens, who are thereby left practically without a remedy to enforce, in our own courts, their claims against such a corporation while thus unlawfully transacting business in competition with those who obey the laws, and while receiving the protection of the state government without contributing to its burdens; for, under the decision, such a corporation, it seems, is not even required to appoint an agent in this state upon whom process can be served. Every principle of justice and fair dealing demands that the laws of the state be obeyed alike by foreign and domestic corporations, and this I conceive to be embraced within the mandates of our Constitution and statutes.

My Brethren have attempted to distinguish the cases cited in the former opinion of this court, but in doing so they have lost sight of the mandatory and prohibitory character of our laws, as compared with the laws of the states upon whose decisions they rely, and also of the distinction, in this class of statutes, between provisions which are merely disabling, and those which are prohibitory and mandatory, as are ours. On this point Mr. Spelling, in his valuable work on Private Corporations (section 89), says: "The effect of statutes imposing conditions precedent upon the contracts of foreign corporations made without compliance with the conditions imposed is a question upon which litigation frequently arises. There is a distinction in this respect between disabling and prohibitory provisions. In the case of the former the validity of their acts and contracts cannot be collaterally attacked. The state alone can object. If, however, the language of the constitutional provision or statute be clearly prohibitory, or if it impose a penalty for violations, then contracts made without previous compliance with the conditions imposed are void and unenforceable by the corporation, whether expressly declared to be so or not. "It is well settled that the corporation cannot

itself take advantage of its noncompliance with such conditions." This statement of the law, by the learned author, has the support of an abundance of the highest authority, as may be observed from an examination of the cases cited in support of it. Nor, in order to enforce a compliance with the laws, is it necessary for the Legislature to say in express terms that contracts made in violation of law are void and unenforceable by the offending corporation. The legislative prohibition itself renders them so.

"Where a statute expressly declares that certain kinds of contracts shall be void, there is then no doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful. The same is true where the contract is in violation of a statute, although not therein expressly declared to be void. It is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*. A statute prohibiting the making of contracts except in a certain manner ipso facto makes them void if made in any other way." (9 Cyc. 475.)

The Supreme Court of Wisconsin, in *Aetna Insurance Co. v. Harvey*, 11 Wis. 394, upon this point said:

"It was claimed for the plaintiff in error that, inasmuch as the statute does not say that any policy issued or note taken in violation of its provisions should be void, therefore they should not be so held, and that the only effect of the law would be to render the agent liable to prosecution for violating it, or to an action for damages. But we do not see how this proposition can be sustained, in view of the well-established rule of law that a contract made in violation of a statute is void and that courts will never lend aid to its enforcement. . . . . It [the law] says the companies shall not transact any business in this state without they possess the requisite amount of capital, etc. And the only evidence it provides for showing this is the sworn statement of its officers, on filing which its agents are authorized to do business. And when we consider this prohibition, and the fact that a foreign corporation could not act in this state except by its agents, and that the agents are expressly prohibited, there seems no room to doubt that the intention of the statute was to entirely prohibit the transaction of any insurance business in this state until the provisions of the act had been complied with; and, this being so, the issuing of the policy and taking the note sued on was a violation of the law, and the company cannot sustain the action. It is not necessary that the law should expressly say that a contract in violation of it shall be void. It is sufficient for it to prohibit it, and its invalidity follows as a legal consequence."

So in *Bartlett v. Vinor,* Carth. 251, Lord Holt said:

"Every contract made for or about any matter or thing which is pro-
hibited and made unlawful by any statute is a void contract, though the
statute itself doth not mention that it shall be so, but only inflicts a
penalty on the offender, because a penalty implies a prohibition, though
there are no prohibitory words in the statute." (9 Cyc. 475-485, *Chat-
anooga B., etc., Assn. v. Denson,* 189 U. S. 408.)

My conviction is that the former decision of this court was
not only supported by the authorities cited in that opinion,
but was in line with practically all the decisions made under
mandatory and prohibitory laws similar to those of this state
upon this subject. For a further presentation of my views
upon this important question, I refer to that opinion reported
in 28 Utah 380, 79 Pac. 570, et seq. I cannot give my judic-
ial sanction to an interpretation of laws which, in my judg-
ment, does violence, not only to the mandates of the Consti-
tution and statutes, but to the hitherto established policy of
this state, and therefore dissent.